IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 26-cv-02912-___

BRIAN K. MALONE,

Plaintiff,

v.

CRAIG HOSPITAL,

Defendant.

---

## COMPLAINT

---

Plaintiff Brian K. Malone ("Plaintiff" or "Malone") hereby sues Craig Hospital ("Defendant"), and alleges as follows:

## THE PARTIES

1.      Plaintiff is an individual residing in the state of Colorado.

2.      Defendant is a nonprofit corporation incorporated under the laws of the State of Colorado with a principal place of business located at 3425 S. Clarkson Street, Englewood, Colorado 80113.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.      This Court has personal jurisdiction over Defendant because its principal place of business is in this State and it has maintained sufficient minimum contacts with this State such that the exercise of personal jurisdiction over it would not offend traditional notions of fair play

and substantial justice.

5.      Venue properly lies in this district pursuant to 28 U.S.C. § 1400(a) because Defendant and/or its agents reside or may be found in this district.

## FACTS

**I.      Plaintiff's Authorship of the Works and His Relationship with Defendant**

6.      Malone is an award-winning professional documentary producer, having produced over 17 documentary films and hundreds of other promotional and marketing video projects over the course of the past 37 years.  Prior to starting his own independent documentary film company, in 1997, Malone worked for approximately 8 years as a writer/producer for Denver television stations KUSA, KCNC and KDVR.

7.      Malone's documentary films have been shown at several festivals, including Denver International Film Festival, Slamdance, Santa Barbara Film Festival, London International Documentary Festival, where his documentaries have received awards and recognition, from both professional peers and general audiences.  Malone's  documentary films have also been broadcast and made available online by the Public Broadcasting System, Netflix, AppleTV, Tubi and Amazon Prime.

8.      Malone has twice won the Denver International Film Festival's top honors for Colorado filmmaker. In 2016, Malone won the Colorado True Grit Filmmaker Award for "Reengineering Sam" and then again in 2021 for "imperfect."

9.      Malone maintains a commercial website (https://www.malonetv.com) where he offers case studies of his commercial work, and provides his information for media companies and independent producers to contact him, as several have done, for decades now, to obtain licenses to

use his copyrighted works in new programs, films, and other publications.

10.    In 2012, Malone began a relationship with Defendant when he was retained, as an independent contractor, on a project-by-project basis, to prepare short "patient profile" films, and other films promoting the services of Defendant's hospital (singularly dedicated to treating individuals with severe spinal-column related injuries).  Over the course the next 12 years, Malone produced some 120 separate video shorts for Defendant, including a half-dozen of those those works pro bono.

11.    Malone has never signed any writing that conveyed to Defendant any rights of ownership in, or rights to reproduce and/or sublicense, any of the works Malone created in his capacity as an independent contractor.

## II.    The Work at Issue in this Lawsuit

12.    In 2012, Defendant orally contracted with Malone to prepare a "patient profile" documentary film focusing on Defendant's treatment of one Steven McDonald, who was shot while on duty as a New York City police detective in 1986 and paralyzed from the neck down, for a fund-raising event for Craig Hospital. Given the quality and breadth of the story, it was mutually agreed by the McDonald family and by the Defendant,  that Malone would move ahead in producing a full-length broadcast documentary using his own footage, at his own expense. Malone had already acquired all of the written performance releases from all of the subjects in the film.

13.    Following the production and delivery of the fundraising video for Craig Hospital, Malone thereafter spent 14 weeks, on his own initiative and at his own direction (with no supervision over his day-to-day conduct by Defendant):   conducting additional research,

3

searching for archival footage and photographs to license for use in the final produced work, negotiating and acquiring the rights to use those prior works in the final produced work, writing the script, scoring the film, and editing (through several iterations) the raw footage and other source materials into final 25-minute documentary entitled "Forgiveness: Detective Steven McDonald NYPD." (hereinafter "the Work").

14.    Pursuant to the unwritten, oral-only agreement between the parties herein, Defendant displayed the Work was at its "PUSH" Annual Fundraising event in March 2013. Malone's video was well received by its audience, and, on information and belief, Defendant's fundraising efforts that evening were highly successful, helping the Defendant raise more than one million dollars that night.

15.    In July of  2013, Malone was awarded the Heartland Emmy$^{tm}$ Award in the "Director" category for his full-length broadcast documentary, "Forgiveness: The Steven McDonald Story."

16.    On December 1, 2014, the U.S. Copyright Office approved and issued Registration Number PA0001925906, rendering Plaintiff the sole author and owner of all rights in the Work protected by the Copyright Act.

**III.    Defendant's Prior Attempt to Unlawfully Sublicense Plaintiff's Work**

17.    In April 2024, ESPN contacted Defendant about licensing footage contained in the Work for ESPN's use in a new original program ESPN was then producing, to be cablecast on its channel, that included Detective Steven McDonald and his involvement in professional sports events.

18.    Defendant initially indicated to ESPN that it had the authority to license the Work

4

to ESPN for such use.

19.     When Malone was made aware of the facts set forth above in paragraphs 14 and 15, he contacted Defendant and made clear that he, and no one else, possesses the rights, under the Copyright Act, to license the Work to any third party for its independent use. Malone noted that one of Defendant's employees, Jordan Ames, had previously acknowledged the Malone, as the copyright owner of the works he created as an independent contractor for Craig, needed to grant permission (license) for Craig to provide copies of such works to third parties.

20.     In response to Malone's explaining to Defendant the difference between the rights (under the Copyright Act) of a copyright *owner* versus those of a non-exclusive *licensee*, Defendant acknowledged, in writing, that Malone retained the exclusive right to license the Work to any third party for any use not directly associated with Defendant's *own* promotion of *its own hospital services*.

**IV.     Defendant's Infringement of Plaintiff's Work**

21.     In 2026, another highly acclaimed documentary producer, Mary Murphy, contacted Defendant and inquired about licensing footage contained in the Work for use in her [independent documentary focusing on the heroic life, career, death, and enduring legacy of NYPD Detective Steven McDonald](#).

22.     In response to said inquiry, Defendant represented to Ms. Murphy that it was the copyright owner and authorized licensor of the Work. Premised on that knowingly false representation, Defendant provided Ms. Murphy a copy of the Work (as well as copies of certain raw footage from Malone's 2014 production of the Work) for her consideration for use in her independent documentary.

23.     Indeed, Defendant prepared and signed a "Materials Release," in which it purported to have the Copyrights in, and to license to her production company, Trinity Films NYC, the right (under the Copyright Act) to copy and display in her documentary film ("Saint of the City") certain clips featuring Detective Steven McDonald that were incorporated into the Work, as well as Malone's raw footage.

24.     Upon learning of the above, Malone again notified Defendant that he, at all times, retained the sole and exclusive right, under the Copyright Act, to license any of the works he authored in his production of the Work to any third party for its independent use.

25.     In a written response to Plaintiff and his counsel dated May 13, 2026, Defendant conceded that "Craig engaged [Plaintiff] to develop completed patient-story and promotional films *for use in the hospital's marketing and fundraising activities.* Those finished works were delivered to Craig *for that express purpose. . . .* [T]he parties' mutual understanding at the time the works were commissioned and delivered [was] to *support **public awareness of Craig's programs**, to highlight patient experiences, and to advance the hospital's mission*."

26.     Notwithstanding this written acknowledgement of the limited scope of the oral license Malone had granted it, Defendant has repeatedly denied Plaintiff's assertion that Defendant is not authorized to license Plaintiff's works to anyone for any use not directly associated with Defendant's own fundraising and promotional efforts.

27.     To the contrary, in written communications with Plaintiff's counsel and Malone, Defendant has maintained that it has the right to license the Work to third parties for uses unrelated to Defendant's own promotion of its hospital services.

28.     To date, Defendant has not committed, in a signed attestation, that it will not again

seek to license, and actually license, the Work to third parties for their own independent use.

29.     Defendant has refused Plaintiff's written demand that it attest in writing that it will return or destroy all copies of Plaintiff's raw footage to him.

COUNT I<br>COPYRIGHT INFRINGEMENT

30.     Plaintiff re-alleges and incorporates paragraphs 1 through 29 as set forth above.

31.     The Work at issue, "Forgiveness: Detective Steven McDonald NYPD," is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 *et seq.*).

32.     Plaintiff owns a valid and subsisting copyright in the Work, having registered such documentary film with the Register of Copyrights.

33.     Defendant reproduced, distributed, displayed, and/or publicly displayed the Work without authorization from Plaintiff.

34.     By its actions, Defendant infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501.  Defendant's infringement was direct, vicarious, and/or contributory.

35.     Defendant's infringement was willful as it acted with actual knowledge or reckless disregard for whether its conduct infringed upon Plaintiff's copyright. Defendant had, prior to its most recent act of infringement, acknowledged that it was not authorized to license the Work to third parties for their own independent use.

36.     Defendant's willfulness is further demonstrated by the fact that Defendant has refused to acknowledge that is has no lawful right to license the Work to third parties (for their

7

own independent use), and has also refused to return or destroy the Plaintiff's raw footage to him, in response to his written demand that Defendant do so "forthwith."

37.     Plaintiff has been damaged as a direct and proximate result of Defendant's infringement.

38.     Plaintiff is entitled to recover its actual damages resulting from Defendant's unauthorized use of the Work. Alternatively, at Plaintiff's election, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), in such amount as deemed proper by the Court.

39.     Pursuant to 17 U.S.C. § 505, Plaintiff is further entitled to recover its costs and attorneys' fees as a result of Defendant's conduct and having to pursue this litigation to vindicate his rights.

40.     Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff unless enjoined by the Court.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

    a.     A declaration that Defendant has infringed Plaintiff's copyrights in the Work;

    b.     A declaration that such infringement was and is willful;

    c.     An award of actual damages and, at Plaintiff's election, an award of statutory damages;

    d.     An award of Plaintiff's costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

    e.     An award of interest, including prejudgment interest, on the foregoing amounts;

f.    An order permanently enjoining Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant, from directly or indirectly infringing Plaintiff's copyrights or continuing to display, transfer, advertise, reproduce, or otherwise market any works derived from the Work or to participate or assist in any such activity; and

g.    For such other relief as the Court deems just and proper.

Dated: June 29, 2026                    ZANSBERG BEYLKIN LLC
                                        100 Fillmore Street, Suite 500
                                        Denver, Colorado 80206

                                        By: */s/Steven D. Zansberg*
                                        Steven D. Zansberg